## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

Naomi Rae Damon                                                PLAINTIFF

v.                             No. 1:14–CV–116-DPM–JTK

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                 DEFENDANT

### Instructions for Recommended Disposition

The following recommended disposition was prepared for U.S. District Judge

D.P. Marshall.  A party to this dispute may file written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court

no later than 14 days from the date of this recommendation.[1]  The objecting party must

serve the opposing party with a copy of an objection.  Failing to object within 14 days

waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Marshall

may adopt the recommended disposition without independently reviewing all of the

record evidence.

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

## Reasoning for Recommended Disposition

Naomi Rae Damon seeks judicial review of the denial of her second application for social security disability benefits.[3]  Damon was 24 years old when she applied.  At that time, she lived with her boyfriend and reared his three children.[4]  She claimed she cannot work due to a learning disability and problems with her knees.[5]

**The Commissioner's decision**.  After considering the application, the Commissioner's ALJ determined Damon has severe impairments — borderline intellectual functioning, learning disability, obesity, history of pleurisy, and chronic knee pain[6] — but she can do some unskilled light work.[7]  Because a vocational expert identified available work,[8] the ALJ determined Damon is not disabled and denied the

---

[3]SSA record at pp. 218 & 222 (applying for benefits on Oct. 7, 2009 and alleging disability beginning Sept. 21, 2008).  *See id*. at pp. 31, 233 & 244 (in first application, she applied on Nov. 5, 2003 and alleged disability since birth; application denied on Mar. 26, 2004).

[4]*Id*. at pp. 43, 223, 257 & 375.

[5]*Id*. at p. 266.

[6]*Id*. at p. 13.

[7]*Id*. at pp. 17-18 (placing the following limitations on light work: (1) no crouching or crawling, (2) no respiratory irritants, (3) tasks where the complexity of tasks is learned by demonstration or repetition within 30 days, (4) work involving few variables, and (5) work involving simple, direct, concrete supervision).

[8]*Id*. at p. 97 (identifying sales attendant and inspectors like lamp inspector as available work).

application.[9]

After the Commissioner's Appeals Council denied a request for review,[10] the

decision became a final decision for judicial review.[11]  Damon filed this case to challenge

the decision.[12]  In reviewing the decision, the court must determine whether substantial

evidence supports the decision and whether the ALJ made a legal error.[13]  This

recommendation explains why substantial evidence supports the decision and why the

ALJ made no legal error.

**Damon's allegations**.  Damon contends substantial evidence does not support

the decision because she meets listing 12.05C.[14]  That listing is one of the ways of

---

[9]*Id*. at p. 23.

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 2.

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[14]Docket entry # 10.

proving disability based on intellectual disability.[15]

**Applicable legal principles**.  To prove disability based on an impairment listed in the Commissioner's regulations (a listing), the claimant must show her condition meets or equals all specified medical criteria.[16]  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."[17]

Proving intellectual disability requires proof of "deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."[18]  Meeting listing 12.05C requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."[19]  The IQ requirement refers to the Wechsler Intelligence Scales in which

---

[15]This order uses the term "intellectual disability" instead of the term "mental retardation" used in the pleadings and the record.  The difference in terms flows from Rosa's law which directed federal agencies to replace the terms "mentally retarded" or "mental retardation" with "individual with an intellectual disability" and "intellectual disability."  The Commissioner made that change to the social security regulations in 2013.  Because the challenged decision was issued in 2013, this order uses the new terms.

[16]*McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011); *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

[17]*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[18]20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

[19]20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C.

"Verbal and Performance IQ scores are added together and are then converted to an overall Full Scale IQ score."[20]

**Damon can't show she meets listing 12.05C because she lacks a valid in-range score**. IQ scores must be valid to count in proving disability. The record contains the IQ scores shown in the following table:

|  | verbal | performance | full scale |
|---|---|---|---|
| age 15[21] | <u>67</u> | <u>63</u> | <u>62</u> |
| age 24, 7 months[22] | <u>68</u> | 83 | 73 |
| age 24, 9 months[23] | 79 | 82 | 79 |

The underlined scores fall within the qualifying range. The ALJ determined the in-range scores are invalid, so the court must determine whether substantial evidence supports that determination. Substantial evidence exists if a reasonable mind will accept the evidence as adequate to support the determination.[24]

The age-15 scores satisfy the requirement for proof of onset before age 22. The

---

[20]William Arthur Atkins, 2 The Gale Encyclopedia of Mental Health 1648 (3d ed.).

[21]SSA record at p. 363.

[22]*Id*. at p. 376.

[23]*Id*. at p. 409.

[24]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

validity of the age-15 scores aren't really disputed.  Even if they were disputed, the ALJ

had a sufficient basis for determining the scores don't reflect current functioning

because Damon "seemed to give up rather quickly and easily when tasks became the

least bit difficult."[25]  This characterization of effort explains higher adult scores and

provides a sufficient basis for rejecting the scores.

The dispositive question is whether the ALJ had a sufficient basis for rejecting

the age-24 in-range verbal score of 68.  "An ALJ may reject IQ scores that are

inconsistent with a claimant's daily activities and behavior, especially when the scores

are based on a one time examination by a nontreating psychologist."[26]  In this case, both

sets of age-24 scores were based on a one time examination by a nontreating

psychologist: the first set by an agency examiner, the second set by an examiner selected

by Damon's attorney.

In discussing the scores, the ALJ observed that the verbal scores — 68 and 79 —

flowed from the same testing instrument, within the same year.  When Damon tested

with her attorney's examiner, she tested 10 points higher.  The temporal proximity of

the scores — two months apart — required the ALJ to consider Damon's adaptive

functioning, because the evidence suggested no reason for an increase in intellectual

---

[25]SSA record at p. 356.

[26]*Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005).

functioning.[27]

The ALJ found Damon's "adaptive functioning and work history support the [later] score of [79]."[28]  Adaptive functioning and work history are proper reasons for rejecting an IQ score because the ALJ "may disregard test scores that are inconsistent with an applicant's demonstrated activities and abilities as reflected in the record as a whole."[29]  The ALJ reasoned, "Ms. Damon has admitted she is able to take care of children and pets, cook complete meals, shop in stores, handle a savings account, socialize with others, sew, bowl, perform household cleaning tasks, and perform her own hygiene tasks without assistance or reminders."[30]  She worked "on a production line prior to her alleged onset date [and] left the job because of schedule changes, transportation problems, and knee pain."[31]  She "completed her disability paperwork without assistance from others.  [Her paperwork] shows that she is able to

---

[27]*Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) ("[A] person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning.").

[28]SSA record at p. 17.  The decision reflects a typo: "78" versus the actual score of 79.

[29]*Clay v. Barnhart*, 417 F.3d 922, 929 (8th Cir. 2005).

[30]SSA record at p. 17.

[31]*Id.* at p. 20.

communicate in writing at a basic level."[32]

Damon's activities are inconsistent "with the deficits in adaptive functioning contemplated by Listing 12.05C."[33]  "Adaptive skills … include the ability to produce and understand language (communication); practical skills needed for activities of daily living (ADLs); use of community resources; health, safety, leisure, self-care, and social skills; self-direction; functional academic skills (reading, writing, and arithmetic); and job-related skills."[34]  Damon's communication skills are adequate: she successfully articulated her reasons for disability during the hearing.  She performs activities of daily living independently, to include caring for a household with three children.[35]  She uses community resources and engages in social activities.  She received special education in math and English, but she graduated from high school.  She clearly and concisely articulated her allegations in agency paperwork.  She worked full-time in the past, but stopped working for reasons unrelated to intellectual disability.

---

[32]*Id.*

[33]*Johnson v. Colvin*, 788 F.3d 870, 873 (8th Cir. 2015) (claimant "can read, write, and count change; can care for herself and her youngest son, whom she raised from infancy; and can perform most household tasks. These activities are not consistent with the deficits in adaptive functioning contemplated by Listing 12.05C.").

[34]Paula Anne Ford-Martin, Emily Jane Willingham & Rebecca J. Frey, 1 The Gale Encyclopedia of Mental Health 820 (3d ed.).

[35]SSA record at p. 257 (reporting that she makes sure boyfriend's children have everything they need and do right).

Damon's adaptive functioning and work history constitute substantial evidence supporting the determination that the in-range verbal score is invalid.  In the absence of a valid in-range IQ score, Damon cannot prove she meets listing 12.05.  Damon may have problems learning by reading,[36] but the ALJ required unskilled work that can be learned by demonstration and repetition.

### Conclusion and Recommendation

A reasonable mind will accept the following evidence as adequate to support the decision: (1) the physical examiner's report of no physical limitations,[37] (2) the mental examiner's opinion that Damon's mental limitation does not preclude the ability to manage some work situations such as the production line work Damon did in the past,[38] (3) independent activities of daily living, (4) the lack of medical treatment during the time period for which benefits were denied, and (5) vocational evidence identifying available work.[39]  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Damon's request for relief (docket entry # 1) and AFFIRMING the Commissioner's decision.

---

[36]*Id*. at p. 264 (reporting that she can read but may not comprehend what she reads).

[37]*Id*. at p. 371.

[38]*Id*. at p. 377.

[39]*Id*. at p. 97 (identifying sales attendants and inspectors like lamp inspector as available work).

Dated this 31st day of August, 2015.

_____
UNITED STATES MAGISTRATE JUDGE